JUSTICE MORRIS
specially concurs.
¶93 I agree that the District Court erred in concluding that the City enjoyed immunity from suit and that the City could not be liable for Shoemaker’s actionable retaliatory conduct. Section 2-9-111(3), MCA, would shield both the City and Shoemaker, as a member of the City Council, from a suit for damages if they had been engaged in the *352 lawful discharge of an official duty associated with legislative acts. A “legislative act” includes those actions that result in creation of law or declaration of public policy. Section 2-9-111(1)(c)(i)(A), MCA. A “legislative act” does not include administrative actions. Section 2-9-111(1)(c)(ii), MCA. I fail to see how either the City’s or Shoemaker’s conduct constituted legislative action.
¶94 Under Bechard v. Rappold, 287 F.3d 827, 829 (9th Cir. 2002), a court should consider two questions when determining whether an act is legislative. First, a court must determine whether the act involves ad hoc decision making or the formulation of policy; and second, whether the act applies to a few individuals or to the public at large. Bechard, 287 F.3d at 829. A court also should consider whether the act was formally legislative and whether the act bears all the hallmarks of traditional legislation. Bechard, 287 F.3d at 829.
¶95 The City passed no laws and formulated no policies during the meeting. The City discussed no proposed laws or policies during its meeting. The City limited the discussions to Denke’s HRC complaint. A decision to demote and to discharge a specific individual constitutes an “administrative” act for which legislative immunity does not apply. Bechard, 287 F.3d at 829. The City did not even discuss any law or formulation of new policy regarding Denke’s HRC complaint. The City also made additional administrative decisions-in direct opposition to their non-retaliation agreement-to use a larger building to accommodate greater attendance at the meeting and to allow unlimited public comment on Denke’s employment matter.
¶96 The City now argues that Denke, in her role as a long-time city clerk, should have “noticed that offending public officials with obnoxious comments is in itself a traditional hallmark of legislation in our country.” I fail to understand how placing an item on the agenda of a public meeting specifically to denigrate a City employee’s right to bring an action against her supervisor’s alleged sexual harassment bears the hallmark of traditional legislation. The City enjoys no legislative immunity pursuant to § 2-9-111(3), MCA.
¶97 I agree with the Court, ¶ 88, that the doctrine of respondeat superior transfers responsibility for Shoemaker’s actions to the City. Legislative immunity offers no protection to the City for Shoemaker’s conduct as a City Council member because his actions were not legislative. Shoemaker’s actions in no way concerned the creation of a new law or declaration of public policy. He claims to have grown concerned about Denke’s HRC complaint after community members approached him to clarify the settlement amount. Shoemaker testified *353 that these community members informed him that rumors had circulated that Denke had received a $15,000 settlement.
¶98 Shoemaker knew these rumors to be false as he had signed the settlement agreement specifying that Denke would receive $508 in medical bills and restoration of her sick leave. Shoemaker also knew that the settlement agreement obligated the City not to retaliate against Denke as a result of her decision to file the HRC complaint. Shoemaker believed, however, that the community’s rumors of a higher settlement amount made him look bad and that “a finger had been pointed at him as a representative of the City.” As a result, Shoemaker felt unburdened to retaliate against Denke in direct contravention of the settlement agreement.
¶99 Shoemaker claimed that he wanted time on the agenda to answer questions concerning the settlement agreement arising from Denke’s sexual harassment charges against the mayor: “I do not know [who got the money or what happened] as nothing has been told to me. Some one [sic] seems to want to sweep this under the carpet and not let the public know about it!” Shoemaker, as a signatory to the settlement agreement, however, possessed specific knowledge of both Denke’s allegations and the terms of the settlement agreement. In fact, the City and Denke settled Denke’s HRC action at a regularly called meeting of the City Council that was open to the public at Denke’s election. Shoemaker attended that meeting. He reviewed the terms of the settlement agreement. And he approved the settlement agreement.
¶100 Shoemaker’s insistence to have Denke’s settlement agreement placed on the agenda applied solely to Denke and did not constitute policy making. Shoemaker sat on the stage at the meeting in his capacity as a member of the City Council. Shoemaker engaged in no legislative acts when he used his City Council position to smear Denke to protect his own political reputation and promote his “personal philosophy.” Bechard provides no protection for Shoemaker’s actions and he should not be allowed to seek refuge behind § 2-9-111, MCA.
¶101 Shoemaker’s behavior taken as a whole, although it contains elements of speech, represents precisely the type of action that the Montana Human Rights Act prohibits. At the very least, the settlement agreement that Shoemaker signed in his official capacity precluded this type of craven attack. Denke’s odyssey drives home the old maxim: “You don’t fight City Hall.” United States v. Barker, 942 F.2d 585, 597 (9th Cir. 1991) (Noonan, J., dissenting).
JUSTICES LEAPHART and WARNER join in the foregoing special concurrence.